## CIRCUIT COURT OF THE CITY OF RICHMOND

Grant Spotswood Cole

    v.

Patti Yvonne Dickerson Cole

December 22, 1989

Case No. N-8281-4

By JUDGE RANDALL G. JOHNSON

This divorce action is before the court on plaintiff-husband's request for an equitable distribution of the parties' property. Defendant-wife opposes the request to the extent that plaintiff seeks distribution of property which defendant claims has already been divided pursuant to an agreement entered into by the parties on December 6, 1988. The purported agreement consists of two identical handwritten documents, one of which is signed and dated by the plaintiff, and the other signed and dated by defendant. The documents begin by stating, "We the undersigned parties agree to the following division of assets and liabilities." After listing certain property and bills and reciting which party will keep which items and which party will pay which bills, the documents conclude with, "I the undersigned agree to all of the above terms." As already mentioned, one document is signed by the plaintiff, and the other is signed by the defendant.[1]

It is plaintiff's position that these documents do not constitute a valid property settlement agreement.

---

[1] Defendant testified, without contradiction, that two documents were prepared because the parties were at home, without a copying machine, and each wanted an exact copy of the paper.

Specifically, plaintiff asserts that there was a failure of mutuality to the alleged agreement because it was not plaintiff's intention at the time he signed the documents to have them be the final agreement between the parties. Plaintiff maintains that the documents, each signed by one of the parties, were merely a memorialization of a *potential* disposition of the marital property, and that his intent at the time he signed one copy was not to enter into a binding agreement, but rather to set guidelines for later use. Plaintiff further contends that defendant's subsequent actions demonstrated that she also did not intend the documents to be a final and binding agreement. The actions cited are the exchange, by the parties and/or their attorneys, of new forms of the agreement with additions and modifications, and the failure of defendant to convey the marital home to plaintiff pursuant to the alleged December 6, 1988, agreement. The court rejects these arguments.

The alleged agreement is a post-nuptial property settlement agreement and therefore is subject to the general law of contract construction. *Parra v. Parra*, 1 Va. App. 118, 335 S.E.2d 157 (1985). Such agreements are merely contracts between married couples, and while either party may challenge the contract's validity, "such determinations should be measured by the same standards used for judging the validity of any contract." 1 Va. App. at 129. The documents in this case clearly constitute a valid contract.

The question of whether or not a contract exists is based upon the conduct and expressed manifestations of the parties at the time of the making of the alleged agreement. In *Lucy v. Zehmer*, 196 Va. 493, 84 S.E.2d 516 (1954), a farmer allegedly sold his farm to a neighbor while drinking at a bar. His testimony was that he never intended to sell the farm but was merely boasting. In fact, he had even whispered to his wife that the "sale" was a joke, and almost immediately after signing a "contract," which was written on the back of a cocktail napkin, repudiated the sale. The Court held, however, that to a third party standing at the scene, it would have appeared that the intention of the parties was to enter into a valid contract. Defendant was forced to convey the farm.

In essence, the unexpressed intentions of the parties are not considered when their conduct is clear in its meaning. Furthermore, "[t]he mental assent of the parties is not requisite for the formation of a contract. If the words or other acts of one of the parties have but *one reasonable meaning*, his undisclosed intention is immaterial except when an unreasonable meaning which he attaches to his manifestations is known to the other party." 196 Va. at 503 (citing Restatement of the Law Contracts, Vol. I, § 71, p. 74) (emphasis added). The law will impute to a party an intention that reasonably corresponds to his acts and words. His real intentions, if unexpressed, are immaterial.

In the case at bar, the conduct of the parties, *at the time the documents were signed*, can only lead a reasonable person to believe that a valid contract was intended to be entered into. The documents were seen and signed by both parties, with full knowledge as to the meaning of the language therein. Furthermore, on the face of the documents, it is clearly stated that the parties agreed to the included terms. The only reasonable conclusion is that the parties intended the documents to be their agreement.

With regard to plaintiff's argument concerning subsequent drafts of agreements being prepared and exchanged, those drafts were never signed by both parties. The fact that a party to a contract might later wish to modify the existing contract, or even enter into an entirely new contract, has absolutely no effect on the existing contract until such modifications are agreed upon, or such new contract is actually entered into. Once the agreement was made on December 6, 1988, the mere drafting of new versions of the agreement did not operate to rescind the already formed contract. Nor does the fact that subsequent drafts were prepared and exchanged have any effect upon the question of whether the December 6, 1988, documents created a contract, since as *Lucy* teaches, the intent of the parties must be examined as of the time the alleged contract is made.

The same analysis applies to defendant's alleged failure to convey the house to plaintiff as provided for

in the December, 1988, agreement.[2] Once parties have created a valid contract, failure to obey its terms may constitute a breach of the contract but does not show a failure to make the contract in the first instance. As stated above, the intent of the parties must be examined as of the time the contract was made, not when one of the parties is in breach. Because the court finds that it was the intent of both parties to enter into the agreement set out in the December 6, 1988, documents, no equitable distribution can be made of the property covered by that agreement.

---

[2] Defendant denies that she has refused to convey the house. In fact, she states that she has signed a deed, but that plaintiff refuses to accept it.